2002 OK CIV APP 21

**Richard Lynn DOPP, Plaintiff/Appellant,**

v.

**OKLAHOMA LOCAL BANK, (formerly Green Country Bank), Commerce, Oklahoma Branch, and Bill D. Freeman, Defendant/Appellees.**

**No. 96,619.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Jan. 11, 2002.

---

Richard Lynn Dopp, Lawton, OK, Pro Se Appellant.

Dennis J. Watson, Miami, OK, for Defendant/Appellee, Oklahoma Local Bank.

Charles W. Chestnut, Miami, OK, for Defendant/Appellee, Bill D. Freeman.

CAROL M. HANSEN, Presiding Judge.

¶ 1 Appellant, Richard Dopp, while incarcerated by the Oklahoma Department of Corrections,[1] filed a petition in district court against Defendants, Local Oklahoma Bank and Bill Freeman, alleging they unlawfully placed a lien on his Thunderbird race car and trailer with the intent to defraud him of this property. Bill Freeman was the loan officer. Dopp alleged Defendants encumbered his personal property without his permission. He stated he payed the "fraudulent loan" and is now attempting to be repaid that amount plus interest and punitive damages. Defendants answered, denying all allegations.

¶ 2 Both defendants filed motions for summary judgment pointing out that Oklahoma statutes deprive an incarcerated person of his civil rights. 21 O.S.1991 § 65 provides:

A sentence of imprisonment under the Department of Corrections suspends all civil rights of the person so sentenced, except the right to make employment contracts during confinement under said sentence, subject to the approval of the Director of the Department of Corrections, when this benefits the vocational training or release preparation of the prisoner, and forfeits all public offices, and all private trusts, authority or power, during the term of such imprisonment. Provided however such persons during confinement shall not be eligible to receive benefits under the unemployment compensation law.

¶ 3 The only decision directly interpreting this statute is a Court of Civil Appeals case, *Welborn v. Wallace*, 2001 OK CIV APP 2, 18 P.3d 1079. The Court therein upheld a district court order dismissing the plaintiff's petition for failure to state a claim upon which relief could be granted on the basis that a prisoner may only file a civil suit when he is claiming a violation of constitutional rights. The Court cited *Byers v. Sun Savings Bank*, 1914 OK 78, 139 P. 948 which distinguished "civil rights" from "natural rights." Natural rights are innate and include life, liberty, the pursuit of happiness and self preservation. Natural rights are not lost during imprisonment, while civil rights, the outgrowth of civilization necessary to the maintenance of organized government are lost or at least suspended during imprisonment. Civil rights include the right to bring a civil action. However, the Court in *Welborn* was not confronted with the constitutional issues before us today.

¶ 4 The concepts of "loss of civil rights" and "civil death" have been said to:

derive from the early common law which treated a person convicted of a felony as beyond the recognition and protection of the law. The present criminal law has moved far from these punitive concepts in the direction of restoring a convicted person to a useful and law abiding citizen. Accordingly, modern decisions and statutory law have been concerned with overturning the effects of these earlier doctrines. *National Conference of Commissioners on*

---

1. The record reflects Dopp is serving a sentence of life without parole for trafficking in marijuana, running concurrently with two 10 year sentences.

*Uniform Laws proposed "Uniform Act on Status of convicted Persons."* [2]

¶5 Twenty years ago, a since repealed statute, 21 1961 § 66, provided that a person sentenced to imprisonment in the state prison for life, was deemed civilly dead. In *Davis v. Pullium,* 1971 OK 47, 484 P.2d 1306, a defendant appealed a jury verdict in a personal injury suit arguing the plaintiff, a convicted murderer under a life sentence, had no right to bring this action, citing the above statute. After serving a period of time in a penal institution, the plaintiff was paroled, but not pardoned. Justice Hodges in a compelling opinion held Article 2, Section 6 of the Oklahoma Constitution, mandated a reversal. This provision states "The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administrated without sale, denial, delay or prejudice." Justice Hodges was emphatic in holding civil death is not a defense to a personal injury action. "Rumors of plaintiff's death are greatly exaggerated." The decision did not address any distinction between a paroled person serving a life sentence or one still incarcerated. Neither does § 65 make such a distinction. Although § 66 has been repealed, *Pullium* is still good law.[3]

¶6 In light of *Davis,* and a recent Supreme Court opinion, *Kordis v. Kordis,* 2001 OK 99, 37 P.3d 866, 72 OBJ 3420, (mandate issued on December 14, 2001) we believe § 65, if interpreted to disallow an action such as this, violates the Oklahoma Constitution. *Kordis* clearly controls. In *Kordis,* the Supreme Court, all justices concurring, reversed an order of the trial court refusing to vacate a previous judgement in favor of defendants basically because the plaintiff was not allowed his day in court. However, the Court also stated:

> To construe this statute (§ 65) as depriving the inmate of his capacity to sue to enforce property rights which vested before his incarceration would pose serious constitutional concerns. Such a construction would be equivalent to treating imprisonment as operating to divest the inmate of his property or working a forfeiture of his property and would violate the due process requirements of the federal and state constitutions and the access to the courts provision of the state constitution. U.S. Const. Amend. XIV; Okla. Const. Art 2 §§ 6 & 7. It would also violate 21 1991 § 68, which provides that · 'no conviction of any person for crime works any forfeiture of any property, except in the cases of any outlawry for treason, and other cases in which forfeiture is expressly imposed by law.' *See also Johnson v. Scott,* (Supreme Court held that dismissal of an incarcerated inmate's claim for failure to appear, where inmate sought to regain possession of certain personal property left at the county jail, violates inmate's right to due process and access to the courts.)

¶7 In this case Dopp is attempting to enforce claimed property rights in his race car through access to the courts. In light of prior Supreme Court decisions, we hold the trial court erred in dismissing his lawsuit based on § 65.

¶8 REVERSED AND REMANDED for further proceedings.

---

**2.** Oklahoma has not adopted this act.

**3.** Other jurisdictions have dealt extensively with this problem. In *McCuiston v. Wanicka,* 483 So.2d 489, (Fla.App.1986), a prisoner filed an action against a sheriff who allegedly could have prevented assault by another prisoner. The Court held that a "civil death" statute which suspended civil rights of convicted felon and barred the prisoner's suit was an unconstitutional denial of the right of access to courts guaranteed by the Federal and State Constitutions. Florida's statute was also commonly known as "civil death" statute. The Court pointed out such statutes arose from the common law notion that a convicted felon is *civiliter mortuus.* "They have been described as an 'archaic remnant of an era which viewed inmates as being stripped of their constitutional rights at the prison gate.'" *Thompson v. Bond,* 421 F.Supp. 878 (W.D.Mo. 1976). Nonetheless, even in recent years the right to initiate civil suits has been held by other jurisdictions to be among the rights suspended by comparable "civil death" statutes. (Citations omitted).

¶ 9 ADAMS, J., concurs.

¶ 10 BUETTNER, J., sitting by designation, dissents.